## 3743.   HERNDON v. THE STATE.

HILL, C. J.   No error of law appears, and the evidence supports the verdict.

*Judgment affirmed.*

DECIDED NOVEMBER 20, 1911.

Accusation of misdemeanor; from city court of Macon—Judge Hodges.   August 19, 1911.

The accusation charged Lewis Herndon with selling alcoholic, spirituous, malt, and intoxicating liquors, and with keeping such liquors on hand at his place of business.   There was a general ver-

dict of guilty. His motion for a ·new trial contains, besides the general grounds, the following assignments of error: (1) The verdict is contrary to law and the evidence, in that the uncontradicted testimony of an unimpeached witness, to wit, W. P. Dumas, affirmatively showed that the alleged liquor which formed the basis for the prosecution was not found at the defendant's place of business; that the place where it was found was not a part of the defendant's place of business; that the defendant had no control over the said place; that the room or passage where the whisky was discovered was in a portion of the building rented to and in the control of third parties, not connected in any way with the defendant or his business. (2) Because the officer who made the arrest was allowed to testify as follows: "After I had placed the defendant under arrest, and had reached the door leading into the room where I found the whisky, I told the defendant to get the key to this door, and had him unlock and open the door of the room. When he opened the door I saw the whisky at the foot of the staircase. It was at my direction that defendant got the key, and at my direction that he unlocked and opened the door to the apartment where I found the whisky." The introduction of this testimony was objected to, because the officer compelled the accused to furnish the incriminating evidence against himself, in violation of the constitution and laws of this State, which provide that no person shall be compelled to give testimony tending in any manner to incriminate himself; and it was acquired while the defendant was under arrest, and without his consent, and against his will. The court overruled the motion for a new trial, and the defendant excepted.

The evidence, substantially stated, is as follows: The deputy sheriff of Bibb county testified, that the accused ran a "soft drink" place and pool-room on Cotton avenue, near New street, in the city of Macon, Bibb county; that in company with another officer he went to this place on March 26, 1911, and there arrested the defendant. The front door of the "soft drink" establishment and pool-room opened on Cotton avenue. The front room was used by the defendant as his "soft drink" place, where he kept soda water, cigars, etc. Just behind this room was the defendant's pool-room, separated by a wall, with a door between. In the rear of the pool-room, at the left-hand corner, "is a little room or passage cut off

by a wall running from ceiling to floor. It is very small, and there is a door leading into it from the pool-room. This door was open on the night of the arrest. Passing into this door, and going directly forward about three or four feet across this little room or passage, you come to another wall, leading from ceiling to floor, which has a door, and this door opens from the little room just mentioned into a room or passage, from which a stairway leads to the second story of the building. This door was locked, and the defendant, at my instance, got the key and unlocked it. The door which I found open, leading out of the pool-room, was only three or four feet from the door of the room or passage in which the whisky was found, and which was locked, and to which the defendant furnished the·key, and all was under one and the same roof with the ' soft drink' place of the defendant and his pool-room. In this last-named room or passage, just at the foot of the stairway, I found an ordinary five-cent basket containing several flasks of whisky. There were six half pints of rye and one half pint of corn whisky in the basket. I asked the defendant for the key to the door at the top of the staircase, which was also locked, and he said that he did not have it; that some members of the bricklayers' union had it. When·I found the whisky I said to the defendant, ' I have found your liquor; ' and he said, ' Yes, sir; you've got me. ' That is all I remember that was said. The stairway, which leads to the upstairs of this building had the appearance of not being in use, as there was considerable trash on it, and the door opening on the rear porch and in front of the stairway just mentioned was closed at the time the whisky was found. There is another stairway, which leads to the upstairs of this building from the front and on the outside of this building. I went to the defendant's place of business with a warrant for him and for the purpose of searching for whisky. This was the only whisky or intoxicant found on this occasion on the place. We made a thorough search of defendant's entire place. The bui'ding occupied by him is a two-story brick building, and his place of business is in the lower story. After passing from the pool-room, I had to go through two doors before I reached the room containing the basket with the whisky in it." The State introduced in evidence a diagram of the part of the building occupied by the defendant, showing the exact location of the room, and place in which the whisky was found, and also intro-

duced a five-cent basket containing six half pints of rye whisky, most of which was dreggy, and a half pint of corn whisky, which had been opened and which had in it a house-fly.

The following evidence was introduced in behalf of the defendant: W. P. Dumas testified, that he was the owner of the building in which the defendant's place of business was located, and had rented the lower floor to him, and that the defendant ran a "soft drink" place in front and a pool-room in the rear; that he rented the upstairs of the building to a colored bricklayers' union; that there were two stairways leading to the quarters above, the front stairway being on the outside of the building, and the rear stairway inside, and the bricklayers' union rented and controlled both stairways, as well as the passage down into which the stairway lands, and that this passage was not a part of the building which was rented to the defendant, and that he had no control over it and no right to use it; that the place where the whisky in question was found was not in any room, but in the little passageway or hall leading to the staircase in the rear of the building, and was separated from the part rented to the defendant by a wall reaching from the ceiling to the floor; that the members of the bricklayers' union often left the key to their quarters in the store of the defendant for their own convenience, and they often left it in the store of the witness, just a few doors below.

The defendant, in his statement to the jury, said, that he ran this "soft drink" place and pool-room on Cotton avenue; that he had never sold any whisky, beer, or intoxicants of any kind at this place of business, and had never kept any on hand; that on the night of his arrest the officers came into his place of business and told him that they wanted to search the place, and proceeded to do so; that they exhibited no warrant of any kind, and did not tell him that they had one; that they searched his "soft drink" place, in the front room, but found no whisky; that they went through the door leading back into the pool-room, searched it, and found none. They then came to the door in the wall which runs from the ceiling to the floor and separates his place of business from that part of the building rented to the colored bricklayers' union. This door was locked, and, at the command of the officer, he went and got the key and opened the door. The union rented the entire upstairs of the

building, including this stairway in the rear, and the little passage or apartment where the stairway lands, the place where the officer found the whisky. He stated that he had no control over the upstairs of the building, the stairway leading thereto, or the little passageway or apartment at the foot of the staircase, where the whisky was found; that these places had no connection with his place of business, which was separated from them by a wall reaching from the ceiling to the floor; that, his store being just under the union men's quarters, the key to the door leading upstairs was often left in his store for the convenience of the men of the union, who were frequently going to their quarters. He further stated that on the night of the arrest he had gotten the whisky for his own use and was going to carry it home and strain it, as it was full of trash and dregs, and one bottle had a fly in it; that in the condition in which it was found it was not fit for use; that, knowing that it was a violation of law to keep or put whisky in one's place of business, he got the key, unlocked the door leading into this passage where the stairway comes down, placed the basket with the whisky in it there, and relocked the door, intending, when he started home later, to unlock the stairs, get the basket, and carry it home with him; that it had been sitting there only a short time before the officers came in, it being only a few minutes before closing time; that he set the basket in the passageway because it had no connection with his place of business, as he knew that by setting it there he would not violate the law; that it was not his custom to use this passage or stairway for any purpose; and that he set the basket there on the night of his arrest only to avoid putting it in his store.

*W. D. Nottingham, W. A. McClellan,* for plaintiff in error.
*Walter J. Grace, solicitor-general,* contra.